John C. Rhodes *vs.* Salem Turnpike & Chelsea Bridge Corporation.

If a turnpike corporation which exercises its franchise in several counties has in one of them a toll-house where it keeps an agent to collect tolls and sell tickets, and where its treasurer sometimes pays workmen whom it employs, it " has " in that county such "an established or usual place of business," that, under the Gen. Sts. *c.* 123, § 5, actions may there be brought by or against it, although it has an office in another county, where its books are kept, and its meetings are held, and which is used by its treasurer and superintendent.

Contract, brought in the county of Suffolk where the plaintiff did not reside nor have his usual place of business.    Answered in abatement, that the defendants had no established or usual place of business in this county, and so the action was not maintainable.    The question of law arising thereon was reserved by *Foster,* J., for determination by the full court on these facts agreed:

The defendant corporation was chartered in 1802 to make a road from Salem in the county of Essex to Charles River Bridge in Charlestown, and build bridges over the waters lying between these places.    Under this power they made such a road and bridges, including a bridge over the Mystic River from Charlestown in the county of Middlesex to Chelsea in the county of Suffolk.    At the Chelsea end of this bridge is a toll-house, at which is stationed an agent of the corporation, empowered to receive, and who does receive, tolls from those passing over this bridge, and who sells season and commutation tickets to cross the bridge, but is not empowered to act for the defendants in any other way; and at this toll-house the treasurer of the de-

fendant corporation sometimes pays the workmen employed in repairing the bridge. The defendant corporation has an office in Salem, at which their treasurer is to be found, their books are kept, and the meetings of the directors and corporation are held, and which is used by their superintendent, who resides in Salem.

*W. C. Endicott*, for the defendants, cited Gen. Sts. *c.* 123, § 5; *Lucas* v. *Nichols*, 5 Gray, 311; *Androscoggin & Kennebec Railroad Co.* v. *Stevens*, 28 Maine, 434; *Connecticut & Passumpsic Rivers Railroad Co.* v. *Cooper*, 30 Verm. 476; *Thorn* v. *Central Railroad Co.* 2 Dutcher, 121.

*H. N. Sheldon*, for the plaintiff, cited also, St. 1784, *c.* 28, § 13, *Day* v. *Jackson*, 5 Mass. 237; *Taunton & South Boston Turnpike Co.* v. *Whiting*, 9 Mass. 321; Rev. Sts. *c.* 90, § 16; Report of Commissioners on Gen. Sts. *c.* 123, § 4; Gen. Sts. *c.* 181, § 9; *Lucas* v. *Lucas*, 3 Gray, 141; *Medbury* v. *Watson*, 6 Met. 248, 249; *Whitton* v. *Bicknell*, 3 Allen, 473; *Commonwealth* v. *Hall*, 4 Allen, 306, 307; *Dudley* v. *Adams*, 5 Allen, 97; *Lancaster* v. *Choate*, Ib. 534; *Morrison* v. *McDermott*, 6 Allen, 123; *Hardy* v. *Yarmouth*, Ib. 282; *Shields* v. *Great Northern Railway Co.* 7 Jur. (N. S.) 631; *Keynsham Blue Lias Lime Co.* v. *Baker*, 2 H. & C. 729; *Taylor* v. *Crowland Gas & Coke Co.* 11 Exch. 1; *Rex* v. *Gardner*, Cowp. 79; *Baldwin* v. *Mississippi & Missouri Railroad Co.* 5 Iowa, 518; *Richardson* v. *Burlington & Missouri River Railroad Co.* 8 Iowa, 260; *Bristol* v. *Chicago & Aurora Railroad Co.* 15 Ill. 436. *Baltimore & Ohio Railroad Co.* v. *Gallahue's administrators*, 12 Grat. 655; *Crofut* v. *Brooklyn Ferry Co.* 36 Barb. 201; *Western Transportation Co.* v. *Scheu*, 19 N. Y. 408; Angell & Ames on Corp. § 107; 2 Redfield on Railways, (3d ed.) § 228, 5, note 14.

HOAR, J. The court are of opinion that a toll-house of the defendant corporation within the county of Suffolk, at which tolls are collected and tickets sold by an agent of the corporation, and where workmen employed by the corporation are sometimes paid by the treasurer, is "an established or usual place of busiress" which the corporation "has" within the county; and tl at artions may therefore be brought by or against

the corporation in that county, under the provisions of Gen. Sts. *c.* 123, § 5. The language of the corresponding provision of the Revised Statutes was " any established or usual place of business." Rev. Sts. *c.* 90, § 16. The commissioners on revision changed " any " to " an," but did not intimate an intention thereby to make a change in the law. Report of Commissioners on Gen. Sts. *c.* 123, § 4.

The defendants ask us to construe the statute as if it had used the phrase " *the* established or usual place of business," or " the principal place of business ; " but we do not understand this to be its meaning. In the case of a railroad, canal or turnpike company, exercising its franchise in more than one county, and transacting business in each of them, with a local establishment for business purposes, it would seem to be reasonable and proper that the corporation might sue and be sued where its operations were thus practically carried on. So in the case of a manufacturing company, which may have its treasurer's office and hold its meetings in the city of Boston, and have its manufacturing establishment in another county ; under this provision of the statute, it could sue and be sued in either place. This bridge company exercised its franchise within the county of Suffolk, and, having an office there at which a part of its business operations were carried on by a permanent agent, where contracts were made, it is probable that causes of action might there arise, which could most conveniently be tried in the same county. The statute is not intended to promote the convenience of the company only, but also of persons having claims against it. And we can have no doubt that wherever a plaintiff can find the corporation regularly carrying on any part of its business, there he may bring his suit against it.

*Answer in abatement overruled.*